UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTHONY DEWAYNE DOYLE, | § | |
| Petitioner, | § | |
| | § | |
| V. | § | Civil Action No. 3:08-CV-138-B |
| | § | |
| RICK THALER, Director, | § | (Death Penalty Case) |
| Texas Department of Criminal Justice | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

ORDER ACCEPTING AND MODIFYING FINDINGS, CONCLUSIONS, AND
RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE, AND
DENYING A CERTIFICATE OF APPEALABILITY

On January 9, 2012, the United States Magistrate Judge made Findings, Conclusions, and

a Recommendation ("F&R", doc. 23) to deny habeas corpus relief in this case.  Anthony Dewayne

Doyle ("Doyle") has filed objections, and the District Court has made a *de novo* review of those

portions of the F&R to which objection was made.  The objections are **OVERRULED**, the Court

**ACCEPTS** the F&R as modified by this order, and **DENIES** Doyle's application for a writ of habeas

corpus for the reasons that follow.

I.

BACKGROUND

This is a petition for a writ of habeas corpus filed under 28 U.S.C. § 2254.  Doyle is a Texas

inmate convicted of capital murder and sentenced to death for robbing Hyun Cho and beating her

to death when she delivered food to his home on January 16, 2003.  In accordance with the jury's

answers to the special issues, the Criminal District Court No. 2 of Dallas County, Texas, sentenced

Doyle to death on May 10, 2004.  Doyle's conviction and sentence were affirmed on direct appeal,

*Doyle v. State*, No. AP-74,960, 2006 WL 1235088 (Tex. Crim. App. 2006), and his petition for a writ of certiorari to the Supreme Court was denied on October 16, 2006. *Doyle v. Texas*, 549 U.S. 976 (2006).

Doyle filed an application for habeas-corpus relief in the state trial court on November 7, 2005. Vol. 1, State Habeas Record ("SHR"), 2. The state trial court issued its findings of fact and conclusions of law that habeas relief be denied on February 14, 2007. 4 SHR 1282. Those findings were adopted by the Texas Court of Criminal Appeals ("CCA") and postconviction habeas relief was denied by the state court on January 23, 2008. *Ex Parte Doyle*, No. WR-67,027-01, 2008 WL 217985.

After this Court appointed counsel for these proceedings, Doyle filed the instant petition for federal habeas relief on January 14, 2009, along with his motion for an evidentiary hearing. Pet., doc. 11; Mot., doc. 12. In the Evidentiary Hearing Order (doc. 21), this Court denied the motion for evidentiary hearing because Doyle did not make specific factual allegations which, if true, would entitle him to federal habeas relief under 28 U.S.C. § 2254(d). Ev. Hrg. Order. The Court then referred the case under 28 U.S.C. § 636(b) and Special Order 3-251, to the United States Magistrate Judge, who made his Findings, Conclusions, and Recommendation ("F&R," doc. 23) to deny relief on January 9, 2012. After having been granted an extension of time, Doyle filed his objections to the F&R on February 15, 2012. Obj., doc. 27.

## II.

## <u>CLAIMS FOR RELIEF</u>

In his federal petition for a writ of habeas corpus, Doyle presents the following grounds for relief:

(1)     The venire from which Doyle's jury was chosen did not reflect a fair cross-section of the community, Pet., 6-33,

(2)     Trial counsel provided ineffective assistance by failing to object to the lack of a fair cross-section of the community in the jury venire, Pet., 34-41,

(3)     The trial court improperly admitted Doyle's oral and written confessions because the waiver of his right to remain silent was not knowingly, intelligently, and voluntarily made due to his mental illness and institutional conditioning to confess, Pet., 42-68,

(4)     Trial counsel provided ineffective assistance by failing to effectively challenge the admission of his confessions, Pet., 69-78,

(5)     Trial counsel provided ineffective assistance by failing to hold the State of Texas to its burden of proof on the *mens rea* element of the offense of capital murder, Pet., 79-100,

(6)     Doyle's death sentence violates his Eighth and Fourteenth Amendment right against cruel and unusual punishment because he was developmentally younger than eighteen years of age at the time of the offense, Pet., 101-122,

(7)     The prosecutor presented false evidence of "bad acts" through testimony of Doyle's participation in a boot-camp program, Pet., 123-136, and

(8)     Trial counsel provided ineffective assistance by failing to discover mitigating evidence and failing to refute the prosecution's aggravating evidence.  Pet., 137-154.

Respondent opposes each of these claims for relief, asserting, *inter alia*, that the first and third claims are procedurally barred, and that the sixth claim is barred by the non-retroactivity doctrine of *Teague v. Lane*, 489 U.S. 288, 310 (1989).

## III.

## <u>MAGISTRATE JUDGE'S F&R</u>

In his F&R, the Magistrate Judge recommended that all of Doyle's claims for habeas relief be denied.  In recommending the denial of Doyle's claims of ineffective assistance of counsel, the Magistrate Judge relied heavily upon this Court's reasoning in the Evidentiary Hearing Order, a prior

order denying Doyle's motion for an evidentiary hearing.  Ev. Hrg. Order, doc. 21.  In the Evidentiary

Hearing Order, the Court examined Doyle's habeas petition in light of the record, found that he had

failed to demonstrate his entitlement to relief as to any of his ineffective-assistance claims and denied

an evidentiary hearing on those claims.  Ev. Hrg. Order, 3-13; F&R, 4.  Referencing the Evidentiary

Hearing Order, the Magistrate Judge reasoned in his F&R that "[a]ll but two of Doyle's [habeas]

claims have already been determined to lack merit in the disposition of his motion for evidentiary

hearing." F&R, 4.[1]  As to Doyle's other claims for relief, the Magistrate Judge rejected Doyle's claim

that his death sentence constituted cruel and unusual punishment on the grounds that he was

developmentally younger than eighteen years of age at the time of the offense.  The Magistrate Judge

agreed with the state court's determination that the mental-health evidence did not warrant relief

under *Atkins v. Virginia*, 536 U.S. 304, 318 (2002) and *Roper v. Simmons*, 543 U.S. 551, 574 (2005)

but was foreclosed by those opinions, and concluded that the claim should be denied as barred by

*Teague*.  F&R, 5-6.  The Magistrate Judge likewise rejected Doyle's claim that the prosecutor

presented false evidence of "bad acts" through testimony of Doyle's participation in a boot-camp

program because Doyle had not shown the state-court's adjudication of this claim to be incorrect,

much less unreasonable or contrary to clearly established federal law.  F&R, 6-8.  Doyle has filed

objections to these recommendations.  Each of Doyle's objections are reviewed *de novo* below.

---

[1] In declaring in his F&R that all *but two* of Doyle's claims for habeas relief were determined to lack merit in the Evidentiary Hearing Order, the "two" claims to which the Magistrate Judge was referring were Doyle's sixth and seventh grounds for relief.  The Magistrate Judge found that Doyle's first ground for relief regarding the venire panel was a "derivative ineffective-assistance-of-counsel claim" and thus implicitly rejected by the Evidentiary Hearing Order. F&R, 4.  He further stated that Doyle's third ground for relief, a claim that his confession was obtained in violation of the Fifth Amendment, was likewise implicitly rejected when the Court denied Doyle's request for an evidentiary hearing as to his fourth ground for relief, an ineffective-assistance-of-counsel claim based on his counsel's failure to challenge the admission of the faulty confession.  F&R, 4.

## IV.

## OBJECTIONS TO THE F&R

Doyle objects on several grounds to the Magistrate Judge's F&R.  First, he objects generally to the standard of review utilized by the Magistrate Judge in reviewing the state court findings.  He maintains that the Magistrate Judge erroneously relied upon "prosecutor-drafted, rubber-stamped findings and conclusions by the state court."  Obj., doc. 27, at 1.  He further maintains that the Magistrate Judge incorrectly "appear[ed] to suggest that [*Cullen v.*] *Pinholster*[2] is an insurmountable obstacle to both the grant [sic] of an evidentiary hearing, and to merits review."  Obj., 4.  Doyle also objects generally to what he labels the "cryptic" nine-page F&R.  Obj., 6.  Aside from these broad-based objections to the F&R, Doyle asserts specific objections to the Magistrate Judge's F&R as to each of his eight grounds for relief.  Most of his arguments supporting his specific objections to the F&R simply restate the arguments he presented in his habeas petition.  Before addressing these objections, the Court turns to the legal standards that apply to a federal court's review of a state habeas petition.

## V.

## STANDARD OF REVIEW

Federal habeas review of these claims is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  If the state court denies a claim on the merits, a federal court may not grant relief unless it first determines that the state-court's adjudication of the claim

---

[2] 563 U.S. ____, 131 S.Ct. 1388 (2011).

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d).  In the context of this analysis, "adjudicated on the merits" is a term of art referring to a state court's disposition of a case on substantive rather than procedural grounds.  *Green v. Johnson*, 1160 F.3d 1115, 1121 (5th Cir. 1997).  This provision does not authorize habeas relief, but restricts this Court's power to grant relief to state prisoners by barring claims in federal court that were not unreasonably denied by the state courts.  The AEDPA limits rather than expands the availability of habeas relief.  *See Fry v. Pliler*, 551 U.S. 112, 119 (2007); *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."  *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 784 (2011).  "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court rulings be given the benefit of the doubt.'"  *Pinholster*, 131 S.Ct. at 1398 (internal citations omitted) (quoting *Richter*, 131 S.Ct. at 786, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

Under the "contrary to" clause, a federal court is not prohibited from granting federal habeas relief if the state court either arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts.  *See Williams*, 529 U.S. at 412-13; *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).  Under the "unreasonable application" clause, a federal court may also reach the merits of a claim on federal habeas review if the state court either

unreasonably applies the correct legal rule to the facts of a particular case or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407; *Chester v. Thaler*, 666 F.3d 340, 344 (5th Cir. 2011). The standard for determining whether a state court's application was unreasonable is an objective one. *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997).

A finding of unreasonableness under § 2254(d) must be made on the record before the state court. "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Pinholster*, 131 S.Ct. at 1400. Under § 2254(d)(2), a petitioner must show that the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## VI.

## <u>ANALYSIS</u>

### A. *General Objections*

#### 1. *Proper Standard of Review*

As a threshold matter, Doyle objects to the manner in which the Magistrate Judge applied the foregoing standards in this case and maintains that he is entitled to an evidentiary hearing on his ineffective-assistance-of-counsel claims. Obj., 1-4. As mentioned, Doyle contends that the F&R and the Evidentiary Hearing Order erroneously deferred to the "prosecutor-drafted, rubber-stamped" state-court findings made without an evidentiary hearing, and argues that this Court must consider

his claims *de novo*.  Obj., 1 (citing  *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007), *Jefferson v. Upton*, __U.S.__, 130 S.Ct. 2217 (2010), and *Anderson v. Bessemer City*, 470 U.S. 564, 572 (1985)).  Doyle's argument is unsupported by his cited authorities and contrary to federal law.  Only one of his cited authorities, *Panetti v. Quarterman*, even addresses the deference required under the AEDPA, and it does not support his conclusion.[3]

The AEDPA requires this Court to afford deference to state-court findings unless a habeas petitioner first overcomes the limitation of § 2254(d)(1) or (2).  This limitation is not overcome merely because the state court adopted the State's proposed findings without conducting a full and fair evidentiary hearing.  In contrast to prior law, AEDPA deference applies to state-court factual findings made even without a "full and fair hearing."  *Valdez v. Cockrell*, 274 F.3d 941, 942, 951 (5th Cir.2001).  However, the showing required under § 2254(d) may be made by demonstrating that the state-court adjudication is dependent on an antecedent unreasonable application of federal law.  *See Panetti*, 551 U.S. at 953 ("When a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires.").  For example, "when a petitioner makes a prima facie showing of mental retardation, a state court's failure to provide him with an opportunity to develop his claim deprives the state court decision of the deference ordinarily due under the AEDPA."  *Wiley v. Epps*, 625 F.3d 199, 207 (5th Cir. 2010) (citing *Rivera v. Quarterman*, 505 F.3d 349, 358 (5th Cir.2007)).

---

[3]*Jefferson v. Upton* addressed pre-AEDPA standards.  *See* 130 S.Ct. at 2221.  *Anderson v. Bessermer City* criticized federal district courts for the verbatim adoption of findings of fact prepared by prevailing parties.  470 U.S. 572.  Neither of these authorities address AEDPA deference.

Doyle has not demonstrated that he made a prima facie showing of entitlement to relief on his claims before the state court, or before this Court (*see* Ev. Hrg. Order), and has not otherwise made the showing required under § 2254(d).  Therefore, the state-court findings are entitled to AEDPA deference regardless of whether Doyle received a "full and fair" evidentiary hearing.  *Valdez*, 274 F.3d at 950-51; *see also Hudson v. Quarterman*, 273 F. App'x 331, 334-335 (5th Cir. 2008) (rejecting arguments that state-court findings are not entitled to deference because the state court (1) did not hold a hearing and (2) adopted the State's proposed findings and conclusions verbatim); *Johnson v. Quarterman*, 204 F. App'x 367, 371 (5th Cir. 2006) (rejecting petitioner's argument that the state-court's findings should be not be given deference because "all credibility decisions were made from a cold record"); *Morrow v. Dretke*, 367 F.3d 309, 315 (5th Cir. 2004) (rejecting argument that the federal court should not defer to the state court's findings where the state court did not allow an evidentiary hearing and the habeas judge was different than the trial judge).

Doyle also objects that the Magistrate Judge suggested in his F&R that the Supreme Court case of *Cullen v. Pinholster*, *supra.*, presented an "insurmountable obstacle" to Doyle's ability to obtain an evidentiary hearing as well as a "merits" review of his habeas petition.  However, neither the Magistrate Judge nor this Court made any such pronouncement regarding *Pinholster.*  Instead, Doyle's complaint appears to be with the language of the Supreme Court's opinion quoted in both the F&R and this order.  Any objection to reliance on such quoted language is overruled.

### 2. *"Cryptic" F&R*

Doyle also complains of the "cryptic" nature of the F&R, noting that it "dispos[ed] of 159 pages of briefing and six of the eight claims in two paragraphs . . . in turn relying on the [Evidentiary Hearing Order] . . . of eight (8) pages . . . whose purpose was to rule on a motion for evidentiary

hearing on ineffective assistance of counsel (IAC) claims." Obj., 6. Underlying this criticism, is Doyle's view that, in light of the bare-bones F&R, he will be unable to identify and preserve his objections to the "rationale underpinning the court's denial of habeas relief." Obj., 6-7.

While a more detailed F&R may have enhanced Doyle's ability to lodge specific objections to the precise rationale for the Magistrate Judge's recommendation, the Court finds that the summary nature of the F&R will not preclude Doyle from preserving his objections to the F&R or from discerning the basis for this Court's ultimate ruling. First, it is important to note that in the Evidentiary Hearing Order, this Court thoroughly analyzed the merits of his claims of ineffective assistance of counsel based upon the facts and legal arguments as presented in his *habeas petition*, and not solely on the arguments presented in his motion. The Court's reliance upon Doyle's habeas pleadings and the state-court record in assessing his right to an evidentiary hearing is reflected in the multiple citations to Doyle's habeas petition as well as the state-court record and the state court findings. Ev. Hrg. Order, 2-8. In so doing, the Court recognized:

> "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief" under 28 U.S.C. § 2254(d). *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). In making this determination, "the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." 28 U.S.C. § 2254, Rule 8(a).

Ev. Hrg. Order, 2. Thus, the F&R incorporates this Court's analysis of the merits of Doyle's ineffective-assistance-of-counsel claim as presented in his habeas petition. Second, in an abundance of caution, this Court details the basis for its rejection of Doyle's habeas claims and objections as well as its acceptance of the F&R.

*B. Specific Grounds for Relief and Objections*

   *1. Fair Cross Section*

In his first habeas claim, Doyle claims that he was denied his Sixth and Fourteenth Amendment rights to an impartial jury because of an under-representation of Hispanics in Dallas County jury venires during the time period of his trial.  Pet., 6-33.  Respondent asserts that this claim is procedurally barred, Ans., 23-26, and lacks merit.  Ans. 26-40.

   <u>**a.**</u>  <u>**Magistrate Judge's F&R**</u>

The Magistrate Judge found that this Court "necessarily rejected" Doyle's fair-cross-section claim, "a Sixth Amendment challenge to the composition of the venire", when it rejected his second ground for relief, "a derivative ineffective-assistance-of-counsel claim based on the same alleged error." F&R, 4 (citing Ev. Hrg. Order).  The Magistrate Judge recommended that relief be denied for the same reasons that the Court relied upon in denying Doyle's motion for an evidentiary hearing on this point.

Specifically, in the Evidentiary Hearing Order, this Court analyzed the merits of his fair-cross-section objection.  The Court determined that Doyle was not entitled to an evidentiary hearing on his claim that his counsel was ineffective for failing to object on this basis because there was no merit to the underlying fair-cross-section claim.  The reasons for this Court's rejection of Doyle's fair-cross-section claim and the Magistrate Judge's F&R rejecting this ineffective-assistance-of-counsel claim are contained in the following portion of the Evidentiary Hearing Order:

> To establish a prima facie violation of the fair-cross-section requirement, a defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic

exclusion of the group in the jury selection process. *See Duren v. Missouri*, 439 U.S. 357, 364 (1979). There was no dispute that Hispanic Americans were a distinctive group in the community, and the first element was established. (SHF #5; 4 SHR 1194.) Doyle contends that the state court incorrectly determined that the second and third elements were not established (SHF ##6-44; 4 SHR 1194-203), and that counsel was not deficient in failing to make that objection. (SHF ##49-51, 54; 4 SHR 1204-5.)

Doyle argues that the second *Duren* element is established by looking to the composition of the venire itself, and comparing the percentage of the "distinctive" group found on the venire with the total population of the community. (Pet. at 20-2, 25-7.) Respondent disagrees and cites a number of Fifth Circuit opinions in support of the argument that the disparity must be determined by looking to "the summoning process, not those who appear for service." (Answer at 32); *United States v. Butler*, 611 F.2d 1066, 1069-70 (5th Cir. 1980); *United States v. Maskeny*, 609 F.2d 183, 189-90 (5th Cir. 1980). Respondent also cites a number of Fifth Circuit opinions such as *United States v. Williams*, 264 F.3d 561, 568 (5th Cir. 2001), holding that the "relevant community" to establish the second *Duren* element in that case consists "of those individuals who are eligible to serve as jurors" and not the total population. *See also United States v. Apodaca*, 666 F.2d 89 (5th Cir. 1982) (affirming denial of claim where defendant presented only evidence of disparity between proportion of target group in gross general population of those selected on jury list, and where "record is totally devoid of any evidence that would tend to establish the percentage in either identifiable class who are eligible to serve as jurors"); *United States v. Brummitt*, 665 F.2d 521, 529 (5th Cir. 1981) ("to establish the prima facie case of a denial of a fair cross-section, the disparity between the proportion of members of an identifiable class on a jury list must be based not on total population but, instead, on those of the identifiable class who are eligible to serve as jurors"). The Court is bound by these precedents.

*Duren* does not guarantee that the "juries actually chosen must mirror the community" but that they must be drawn from a source that is fairly representative of the community. *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975). "The fair-cross-section requirement does not guarantee 'jur[ies] of any particular composition.' *Taylor*, 419 U.S. at 538, 95 S. Ct. 692. Rather, it only guarantees that 'the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups.'" *Paredes v. Quarterman*, 574 F.3d 281, 289 (5th Cir. 2009). The Constitution assures due process in the summoning of a fair cross section of jurors, not in the response of those properly summoned. Since Doyle's own expert admits that there was no disparity between Hispanic Americans in the community and those summoned for jury service, this second element is

established against Doyle.[4]  This also precludes the third element since there was no underrepresentation of those summoned for jury service.

Since Doyle's allegations evince no violation of *Duren*, there could be no ineffective assistance for failing to raise the *Duren* claim.  *See Turner*, 481 F.3d at 298. Hence, no evidentiary hearing is warranted on this claim and Doyle's motion is DENIED in this regard

Ev. Hrg. Order, 3-5.

### b. Doyle's Objection to the F&R

Aside from complaining about the "cryptic" nature of the F&R, Doyle objects that the

Evidentiary Hearing Order and, in turn, the Magistrate Judge's F&R incorporating that opinion,

erroneously relied upon Circuit precedent that was contrary to or an unreasonable application of

federal law.  Obj., 8.  Doyle takes issue with this Court's reliance on the opinion of the Fifth Circuit

Court of Appeals in *United States v. Brummitt*, 665 F.2d at 529, for the proposition that "the

disparity between the proportion of members of an identifiable class on a jury list must be based not

on total population but, instead, on those of the identifiable class who are eligible to serve as jurors"

because the Supreme Court in *Duren* relied upon the total population as reflected in the census.

Obj., 8-10.  Doyle claims that *Duren* measures the distinct group on the jury panel, who qualified

for the selection process, against the percentage of the distinct group in the total population,

without regard to whether the percentage of the distinct group in the total population is or is not

qualified for the selection process.  Obj., 10, 15-16.

---

[4]The state-court record includes an affidavit from Harold J. Hietala, an Emeritus Professor of Anthropology and Statistical Science at Southern Methodist University, tendered by the attorney for Doyle in support of his claim.  This affidavit included the assessment that "Hispanics are summoned for jury service in the same proportion as their representation in the population of people 18 years of age or older.  That is, there appears to be no under-representation of Hispanics relative to the first level of under-representation." (3 SHR 986).

Doyle also objects to this Court's prior ruling that "[t]he Constitution assures due process in the summoning of a fair cross section of jurors, not in the response of those properly summoned." Obj., 11 (citing Ev. Hrg. Order, 5).  Doyle contends that a systematic exclusion in violation of *Duren* is shown in "the implicit and automatic exemption given by the governmental entity" when it failed to enforce the summons.  Obj., 11-12, 14.  Doyle also contends that the jury-selection system is deficient in the low daily pay provided for jurors.  Obj., 12-15.

### c. Court's Analysis

Doyle's objections do not show any entitlement to relief.  As mentioned, this Court relied upon the merits of Doyle's habeas pleadings in deciding his motion for an evidentiary hearing on his ineffective-assistance-of-counsel claims.  In fact, in its analysis denying the evidentiary hearing, the Court presumed the truth of Doyle's allegations in light of the record as a whole, rather than relying on the deference required under the AEDPA.[5]  Ev. Hrg. Order, 2, 13.  In incorporating this reasoning into his F&R, the Magistrate Judge, in effect, applied a more lenient standard of review than required under the AEDPA.  Doyle's fair-cross-section claim was fully addressed and rejected on the merits under this more lenient standard.  For clarity and because the AEDPA supplies the

_____

[5]The F&R applied the AEDPA standard, but this Court's prior order denying an evidentiary hearing utilized the more lenient standard under *Schriro v. Landrigan*, 550 U.S. at 474, of "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Ev. Hrg. Order, 2.  Since relief on the claims considered was governed by 28 U.S.C. § 2254(d), the Court was required to take those standards into consideration in determining that an evidentiary hearing was not appropriate.  *See Schriro*, 550 U.S. at 474.  Even so, the Court assumed the specific factual allegations to be true to the extent that they were not refuted by the record.  *See id.* (an evidentiary hearing is not required if the record refutes the applicant's factual allegations or otherwise precludes habeas relief).  Applying the *Schriro* standard, the Court concluded that, even if Doyle's specific factual allegations were true, he had not shown an entitlement to federal habeas relief in light of the record.  Ev. Hrg. Order, 13.  This Court's findings that certain claims did not meet the more lenient *Schriro* standard, would preclude relief on those claims under 28 U.S.C. § 2254(d).

proper review standards for federal habeas petitions, the Court will also address Doyle's fair-cross-section claim under the AEDPA standards. Applying the AEDPA standards of review necessarily starts with a review of the state court's findings.

### i. State Habeas Findings

The state habeas court found that Doyle did not raise this fair-cross-section complaint at trial, that he had forfeited the error for collateral review by not raising it previously, and that it was therefore procedurally barred from review on the merits. 4 SHR 1257, 1259 (citing *Ex parte Dietzman*, 851 S.W.2d 304, 305-06 (Tex. Crim. App. 1993)). In the alternative, the state court performed a merits analysis and found that only one of the three elements set out in *Duren v. Missouri*, 439 U.S. at 364, had been shown: that Hispanics are a distinctive group in Dallas County. 4 SHR 1257. The court found that Doyle had not offered any evidence to show, under the second prong of *Duren*, that the number of Hispanics in Dallas County venires is not fair and reasonable in relation to the number of Hispanics in Dallas County who are qualified for the jury-selection process. 4 SHR 1257-1258. Doyle had not shown the number of Hispanics who were actually qualified to serve on a jury, and relied upon statistics suggesting that they did not respond to their jury summons in the same proportion as other groups. 4 SHR 1258. However, the court also noted the opinion of Doyle's expert that the representation of Hispanics on Doyle's venire was "comfortably close" to their representation in the community, that they are summoned in the same proportion as their population in the community, and that "there appears to be no bias in the selection of Hispanics that are summoned for jury service." 4 SHR 1258 (quoting Hietala Affidavit, p. 7); *see supra,* 13 n.4. The court also found that Doyle produced no evidence of state action, under the third prong of *Duren*, that systematically excluded Hispanics from the venire process or

of any different selection standards for Hispanics.  4 SHR 1258-1259.  The state court concluded that Hispanics are not under-represented on Dallas County venires, that the selection process in Dallas County does not result in a systemic exclusion of Hispanics, and that no violation of the fair-cross-section-of-the-community requirement of the Sixth Amendment had been shown.  4 SHR 1258-1259.

### ii.  AEDPA Standards Applied to the State Court's Findings

"A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." *Martinez v. Ryan*,  566 U.S. ___, 132 S. Ct. 1309, 1316 (Mar. 20, 2012).  In *Martinez*, the Supreme Court modified the rule in *Coleman v. Thompson*, 501 U.S. 722, 729 (1991), that set forth the exceptions to bar.  "A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law."  *Martinez*, 132 S. Ct. at 1316 (expanding definition of cause to excuse procedural default on certain ineffective-assistance-of-counsel claims). The Court has also recognized a miscarriage-of-justice exception by asserting actual innocence as a gateway to the consideration of procedurally barred claims.  *See House v. Bell*, 547 U.S. 518, 536-37 (2006) (that, in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995))).

The state habeas court found that Doyle did not raise this claim at his trial.  4 SHR 1257. It expressly and unambiguously concluded that Doyle forfeited the error by not raising it previously, and denied the claim as procedurally barred.  4 SHR 1259 (citing *Ex parte Dietzman*, 851 S.W.2d

at 305-06 (discussing proper application of contemporaneous-objection rule)).  These findings were adopted by the CCA in its denial of relief.  *See Ex parte Doyle*, 2008 WL 217985.

The Texas contemporaneous-objection rule has been held to be an independent and adequate state ground to bar federal habeas review.  *See Cardenas v. Dretke*, 405 F.3d 244, 249 (5th Cir. 2005); *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).  Doyle contends that this rule was not adequate to bar federal habeas review because the state habeas review was the first realistic opportunity that he had to raise his fair-cross-section claim.  Pet., 19.  Respondent disputes that, pointing out that Doyle has not shown when he actually received the jury list, that the law-review article relied upon for this claim was published in 2001, that capital defendants have customarily challenged the composition of the venire at trial, and finally that state law requires a written challenge to the array before the panel is qualified.  Ans., 24-25 (citing Tex. Code Crim. Proc., art. 35.06 & 35.07).

The Court of Appeals has recognized that the state requirement to timely raise a fair-cross-section claim prior to its postconviction habeas review is adequate to bar federal habeas review of the merits of these claims.  *See Paredes v. Quarterman*, 574 F.3d at 289 (finding fair-cross-section challenge to grand jury procedurally defaulted); *Soria v. Johnson*, 207 F.3d 232, 249 (5th Cir. 2000) (concluding district court erred in failing to apply state procedural default to bar review of fair-cross-section challenge to petit jury venire).  Doyle has not shown that an exception exists to the imposition of the procedural bar.  Therefore, Doyle's first claim must be denied as procedurally barred.

In the alternative, the Court finds that this claim lacks merit.  As noted in the Evidentiary Hearing Order, to establish a prima facie violation of the fair-cross-section requirement, a defendant

must show (1) that the group alleged to be excluded is a distinctive group in the community, (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process. *See Duren*, 439 U.S. at 364; *see supra*, 12.  The state court also conducted an alternative merits review of the fair-cross-section claim.  As found by the state court, Doyle has only shown one of these three elements: that Hispanics are a distinctive group in Dallas County.  4 SHR 1257.

As in state court, Doyle complains that there was a disparity in the number of Hispanics that appeared in response to the jury summons: "the design of the system inherently causes [a] large number of people, and Hispanics in particular, to stay home rather than report for jury service."  1 SHR 35; Pet., 28.  Doyle identifies two reasons for this: low juror pay, and failure to enforce the summons.  1 SHR 35-38; Pet. 28, 30.  The state court reasonably rejected this argument, focusing on whether distinct groups are left out of the process by not being summoned in the first place.  4 SHR 1258.  As previously stated, the state court noted the testimony of Doyle's statistical expert that Hispanics are summoned for jury service in the same proportion as their representation in the community and there did not appear to be any bias in the summoning of Hispanics for jury service.  4 SHR 1258 (quoting Hietala Affidavit at 6, 7); *see supra*, 13 n.4, 15.  The state court reasonably concluded that Hispanics were not underrepresented in Dallas County venires, and that "an individual's personal reasons for not reporting, i.e. low juror pay, economic reasons, or non-enforcement of juror summons," did not constitute "government action" to show a systematic exclusion under *Duren*.  4 SHR 1259, 1260.

Doyle's objection to the application of Circuit precedent must be overruled.  Obj., 8-10. This Court follows Circuit precedent, and presumes that Doyle is merely preserving this issue for appellate review.  Doyle's objection to this Court's prior ruling that *Duren* assures due process in the summoning of a fair cross-section of jurors, not in the response of those properly summoned, is also overruled.  Obj., 11-12.  Doyle's contentions that a systematic exclusion is shown in "the implicit and automatic exemption given by the governmental entity" when it failed to enforce the summons, and that the jury-selection system is deficient in the low daily pay provided for jurors, go beyond the protections of *Duren*.  Obj., at 11-15.

Reversing a grant of habeas-corpus relief, the Supreme Court in *Berghuis v. Smith*, ___ U.S. ____, 130 S. Ct. 1382, 1395-1396 (2010), held that it had never clearly established that jury-selection-process features including "the County's practice of excusing people who merely alleged hardship or simply failed to show up for jury service, its reliance on mail notices, its failure to follow up on nonresponses, its use of residential addresses at least 15 months old, and the refusal of Kent County police to enforce court orders for the appearance of prospective jurors" could give rise to a fair-cross-section claim.  The Court stated that it had also never clearly decided whether the impact of social and economic factors such as those raised by Doyle could support a fair-cross-section claim.  *Id.*, at 1395 n.6.  Doyle's asserted interpretation of federal law is not clearly established, and was not clearly established at the time the state court findings were made in this case, and therefore do not support relief under § 2254(d).

Finally, Doyle's claim is identical to a claim found meritless in *Rivas v. Thaler*, 432 F. App'x 395 (5th Cir. 2011) (unpublished).

- 19 -

> Rivas contends that low juror pay and Dallas County's lack of enforcement of its summonses is to blame for the disparate turnout. But the fact that certain groups of persons called for jury service appear in numbers unequal to their proportionate representation in the community does not support Rivas's allegation that Dallas County systematically excludes them in its jury selection process. Such an occurrence does not constitute the type of affirmative barrier to selection for jury service that is the hallmark of a Sixth Amendment violation.

*Id.* at 402-403 (citing *Taylor v. Louisiana*, 419 U.S. 522, 531 (1975)). Doyle has not shown that the state-court adjudication of his fair-cross-section claim was incorrect, much less unreasonable. The state court properly found that Doyle had not shown a *Duren* violation.

For all of these reasons, Doyle's first claim that his venire was not composed of a fair cross-section of the community is **DENIED** as procedurally barred, and in the alternative it is **DENIED** for lack of merit. Doyle's corresponding objections to the F&R are **OVERRULED**.

### 2. *Ineffective Assistance of Counsel: Fair Cross-Section*

In his second claim, Doyle asserts that he was denied the effective assistance of counsel because his state trial counsel failed to raise an objection that the jury venire did not represent a fair cross-section of the community under *Duren*. Pet., 34-41.

### a. <u>Magistrate Judge's F&R</u>

The Magistrate Judge, as mentioned above, summarily rejected this claim, incorporating this Court's reasoning on this issue from the Evidentiary Hearing Order. F&R, 4. Since the underlying merits of this claim—whether Doyle was denied a venire panel that consisted of a fair cross-section of the community—were analyzed and rejected in detail above, both under AEDPA standards and the more lenient standards employed by the Court in denying Doyle's motion for an evidentiary hearing, the Court's will only briefly address this second claim.

### b. <u>Doyle's Objection to the F&R</u>

Doyle's objections to the F&R on his second ground are presented in combination with his objections to the F&R as to his first ground, that the jury venire did not consist of a fair cross-section of the community.  Obj., 8-16.

### c. Court's Analysis

For all of the reasons stated above finding Doyle's fair-cross-section claim meritless, the Court finds that his ineffective-assistance-of-counsel claim on this ground also fails.  Under the standard utilized by this Court in the Evidentiary Hearing Order or as reviewed under the AEDPA's more rigorous standards, Doyle's claim of ineffective assistance of counsel must be denied.

The state court found that since the fair-cross-section claim lacked merit, trial counsel was not ineffective for failing to make the meritless objection.  4 SHR 1260-1261.  Claims of ineffective assistance of counsel are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of subsection 2254(d)(1).  *Huricks v. Taylor*, 417 F. App'x 423, 427 (5th Cir. 2011) (citing *Ladd v. Cockrell*, 311 F.3d 349, 357 (5th Cir. 2002) and *Murphy v. Johnson*, 205 F.3d 809, 813 (5th Cir.  2000)).  A case is contrary to clearly established federal law under § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached  by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  In the context of a *Strickland* claim on federal habeas review, the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable" and ***not*** whether the reviewing court itself believes trial counsel's performance violated *Strickland*'s standards.  *Richter*, 131 S. Ct. at 785.  In other words, the AEDPA does not permit a *de novo* review of state trial counsel's conduct under *Strickland*.  *Id*.  Instead, on federal habeas review of a claim fully adjudicated in state court, the state

court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* When deciding if the state court's decision involved an unreasonable application of clearly established federal law, the federal habeas court looks to whether the state court's decision was ***objectively*** unreasonable. *See Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).

The state court's determination is upheld under this deferential standard "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Doyle has failed to overcome this deferential standard of review as to his second claim that he received ineffective assistance of counsel; when his counsel failed to object to the jury venire.  "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).)  For these reasons, Doyle's second claim lacks merit and is **DENIED**. Doyle's objections to the F&R on this point are **OVERRULED**.

### 3. Involuntary Confession

In his third claim, Doyle complains that his confession was coerced because his waiver of his right to remain silent was not knowingly, intelligently, and voluntarily made due to his mental impairments and years of conditioning at the hands of state actors. Pet., 42-68.  Doyle complains that his written statement to the police and his oral statements to peers following the murder were improperly admitted at his trial.  Respondent asserts multiple procedural bars and also argues that the claim lacks merit. Ans., 45-53.

### a. Magistrate Judge's F&R

The Magistrate Judge summarily rejected this claim, relying on the reasoning contained in the Evidentiary Hearing Order. Specifically, the Magistrate Judge stated: "in denying a hearing on Doyle's fourth ground for relief, an ineffective-assistance claim based on counsel's failure to effectively challenge the admission of his confession, this Court necessarily rejected the third ground for relief, which is the underlying claim that the confession violates the Fifth Amendment." F&R, 4. The reasoning for rejecting this claim, incorporated by the Magistrate Judge into his F&R from the Evidentiary Hearing Order, follows:

> In the fourth ground of his petition, Doyle complains that trial counsel failed to adequately and effectively challenge the voluntariness of Doyle's oral and written confessions. In determining whether Doyle's allegations indicate that a valid voluntariness challenge was available to trial counsel, the Court is guided by the due process voluntariness test which Supreme Court has "refined . . . into an inquiry that examines 'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession." *Dickerson v. United States*, 530 U.S. 428, (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). "In order for a defendant to establish that his confession was involuntary, he must demonstrate that it resulted from coercive police conduct and it is essential that there be a link between the coercive conduct of the police and the confession of the defendant." *Hopkins v. Cockrell*, 325 F.3d 579, 584 (5th Cir. 2003) (citing *Colorado v. Connelly*, 479 U.S. 157, 163-65 (1986)).
>
> Doyle does not identify evidence showing that his will was overborne, that there was any coercive conduct by law enforcement officials who obtained the confessions, or that any serious mental disorder existed that could have prevented him from understanding the nature of this conduct or making a voluntary confession. Instead, Doyle relies upon a statement by his attorney at the hearing on the motion to suppress that "there was never any type of inquiry as to the intellectual level of the defendant or any idea of his mental state" at the time of his confessions (31 RR 83), combined with mental evaluations that Doyle had a mild organic impairment (1 SHR 49; 2 SHR 598-600) and claims that he was "conditioned" by his prior institutional circumstances and training to confess. (37 RR 52, 176; 39 RR 22-24; Pet. at 66, 70, 74, 76.) None of this evidence rises to a level sufficient to meet the due process voluntariness test and therefore would not have constituted a valid objection. Again, the failure to make a meritless objection cannot constitute ineffective assistance. *See Turner*, 481 F.3d at 298. Once again, no evidentiary hearing is warranted on this claim and Doyle's motion is DENIED in this regard.

Ev. Hrg. Order, 5-6.

### b. Doyle's Objections to the F&R

Doyle objects to the F&R maintaining that he has shown "by a totality of the circumstances that his confession was not voluntary." Obj., 18. He also reasserts the argument that the years of conditioning by state actors satisfies the requirement to show police coercion. Obj., 18-19. He further complains that the Court's statement, cited above, that Doyle had failed to show "any serious mental disorder existed that could have prevented him from understanding the nature of his conduct or making a voluntary confession" conflicts with the Court's later reliance upon trial testimony reflecting that a serious mental disorder existed. Obj., 17. Doyle further asserts that the Supreme Court's opinion in *Pinholster* "requires that we assume the truth of all of the allegations and evidence that Mr. Doyle put before the state court, who ruled that federal law was not violated."[6] Obj., 17.

### c. Court's Analysis

This claim lacks merit. Doyle has failed to demonstrate that this Court's analysis of the merits of his claim in its Evidentiary Hearing Order was erroneous. Nor has he overcome the deference to which the state court findings are entitled under the AEDPA. The Court begins its analysis by reviewing the state-court findings.

#### i. State Habeas Findings

---

[6]Doyle repeats this assertion in his objections on grounds 5 and 8 but does not identify where in the *Pinholster* opinion the Supreme Court suggests this presumption. This Court finds no support for Doyle's assertion, which is contrary to the AEDPA deference upon which the Court in *Pinholster* relied. *See* 131 S. Ct. at 1398 (discussing "highly deferential" AEDPA standard).

The state habeas court found that Doyle did not object at trial to the admission of the oral statements that he made to his peers and that these claims were barred by the contemporaneous-objection rule.  4 SHR 1261, 1266 (citing *Ex parte Dietzman*, 851 S.W.2d at 305-06).  The state court also found that the objections Doyle made in the suppression hearing to his written confession (that police made no inquiry into Doyle's intellectual level or mental state at the time he made the confession) did not comport with the claims made in the habeas proceedings (that his confession had been coerced by the conduct of state actors), and therefore those grounds were also procedurally defaulted under the same rule.  4 SHR 1261-1262, 1266.  In addition, the state habeas court found that these objections could have been but were not made on direct appeal, and were also procedurally defaulted on that basis.  4 SHR 1262, 1266 (citing *Ex parte Townsend*, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004)).  These findings were adopted by the CCA in its denial of relief. *See Ex parte Doyle*, 2008 WL 217985.[7]  This constitutes an independent and adequate state ground to bar federal review, and Doyle has asserted no exception to this bar.  Therefore, Doyle's third claim must be denied as procedurally barred.

In the alternative, the state habeas court recommended the denial of this claim on the merits.  The state court found that Doyle engaged in multiple telephone conversations with his peers both before and after he was arrested, giving them details of the murder.  4 SHR 1262.  The

---

[7]The Texas rule requiring claims that are apparent from the record on appeal to be raised in the direct appeal (also known as the *Gardner* rule) has been recognized as an independent and adequate state ground to bar federal review. *See Dorsey v. Quarterman*, 494 F.3d 527, 532 (5th Cir. 2007) (citing *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1998)); *Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004); *Soria v. Johnson*, 207 F.3d at 249.  However, this claim relies on evidence that Doyle developed in the state habeas proceedings, and may not be the type of record-based claim that the *Gardner* rule was designed to bar in state habeas proceedings.  It is not necessary to determine whether the *Gardner* rule bars this claim because it is barred under the Texas contemporaneous-objection rule. *See Cardenas*, 405 F.3d at 249; *Fisher*, 169 F.3d at 300.

state court found that these confessions were voluntary, were not the result of custodial interrogation or state activity, and did not invoke the safeguards against involuntary self-incrimination. 4 SHR 1263, 1267. The state court found that Doyle was not intoxicated or sleep-deprived when the police officer read him his *Miranda* rights, that Doyle initialed each warning after it was explained to him, and that Doyle said that he understood the warnings. 4 SHR 1263. The state court found that Doyle gave an oral statement about the murder to the police officers after voluntarily waiving his *Miranda* rights, and then agreed to put his statement into writing. 4 SHR 1263. It found that Doyle was then left alone to write his statement at his own pace, that Doyle initialed the *Miranda* warnings at the top of each page, and that he was given the opportunity to use the bathroom and have something to drink. 4 SHR 1263-1264. The state court also found that Doyle was literate, of average intelligence, and not mentally retarded. 4 SHR 1265. The state court found that Doyle did not present evidence of any coercive police conduct. 4 SHR 1263. The state court concluded that Doyle knowingly, intelligently, and voluntarily waived his rights and executed his written statement, and that his oral and written statements were properly admitted into evidence. 4 SHR 1267.

In his federal habeas petition, Doyle claims that he has serious psychological disturbances, is organically brain-impaired, and has frontal lobe dysfunction, causing him to function at a subnormal level. Pet., 44. Doyle also claims that his school principal, juvenile probation officers, and Texas Youth Commission ("TYC") staff members dealing with his behavioral problems, conditioned him to confess to his authorities and to "hold himself accountable" to his peers regarding his behavior. Pet., 45-50. Doyle argues that this conditioning, combined with his mental impairments, rendered his oral and written confessions involuntary. Pet., 50-55.

### ii. AEDPA Standards Applied to the State Court's Findings

The state-court findings on the merits of this claim have not been shown to be incorrect, and are consistent with this Court's prior analysis denying an evidentiary hearing. Ev. Hrg. Order, 5-6. As the Evidentiary Hearing Order noted, "[i]n order for a defendant to establish that his confession was involuntary, he must demonstrate that it resulted from coercive police conduct and it is essential that there be a link between the coercive conduct of the police and the confession of the defendant." *Hopkins v. Cockrell*, 325 F.3d at 584 (citing *Colorado v. Connelly*, 479 U.S. at 163-65); *see supra*, 23 (quoting Ev. Hrg. Order, 6). Doyle objects that the analysis in the Evidentiary Hearing Order did not adequately consider his mental impairments, Obj. 17, but his lack of evidence showing police coercion is fatal to his claim. "Contesting the voluntariness of a confession requires the defendant to show—looking at the totality of the circumstances—that but for the police coercion, he would not have confessed. . . . For a confession to be rendered involuntary because of mental condition, there must be coercive activity by the police." *Hernandez v. Thaler*, 463 F. App'x 349, 353 (5th Cir. 2012) (citing *Muniz v. Johnson*, 132 F.3d 214, 219 (5th Cir. 1998), and *Colorado v. Connelly*, 479 U.S. at 165).

Doyle identifies no clearly established federal law in support of his theory that years of "conditioning" in school and juvenile programs can constitute coercive police conduct. Instead, this requirement is directed at the conduct of the police officers themselves. In this case, the conduct of the police is not at issue and was not even involved in the oral confessions Doyle gave to his peers. Therefore, the state-court adjudication was not incorrect and far from an unreasonable determination under § 2254(d). This claim lacks merit and may be denied on that basis.

Doyle's third claim is **DENIED** as procedurally barred, and in the alternative, it is **DENIED** for lack of merit.  Doyle's objections to the F&R on this point are **OVERRULED**.

### 4. *Ineffective Assistance of Counsel: Involuntary Confession*

In his fourth claim, Doyle asserts that his trial counsel was ineffective for failing to effectively challenge his confession at trial by asserting the grounds raised in his third claim.  Pet., 69-78.

### a. <u>Magistrate Judge's F&R</u>

The Magistrate Judge, again, incorporated the Evidentiary Hearing Order's finding that federal habeas relief on this claim is not available because Doyle's factual allegations, even if true, would not entitle him to federal habeas relief under 28 U.S.C. § 2254(d).  F&R, 4 (citing Ev. Hrg. Order).  The Magistrate Judge, accordingly, recommended that relief be denied.

### b. <u>Doyle's Objections to the F&R</u>

Doyle's objections are presented in combination with his third claim and center on the merits of the underlying involuntary-confession claim, which is discussed in the preceding section. Doyle also reasserts his argument that trial counsel was ineffective for failing to investigate, develop and present these facts and theory at the suppression hearing, failing to make this challenge at trial, and failing to request a jury instruction. Obj., 19.  He argues that prejudice is shown because of the importance of the confessions at trial.

### c. <u>Court's Analysis</u>

First, the foregoing analysis rejecting the merits of the underlying claim establishes that Doyle's ineffective-assistance-of-counsel claim for failing to make the involuntary-confession claim also cannot stand. As stated previously, Doyle's counsel cannot be considered legally ineffective for failing to raise a meritless objection. Further, Doyle has not overcome the AEDPA deference to

which the state-court decision rejecting his ineffective-assistance-of-counsel claim is entitled. Because Doyle has not shown coercive police activity, his involuntary-confession claim lacks merit and his attorneys were not deficient for failing to make a meritless claim. *See Clark*, 19 F.3d at 966. Doyle's fourth claim also lacks merit and must be denied.

### i. State Habeas Findings

The state court found that Doyle did not show trial counsel to be ineffective, that counsel challenged the admissibility of his written statement in a pretrial suppression hearing, and that after Doyle made the decision not to testify, this statement was necessary to show in Doyle's own words that he did not have the specific intent to kill the victim. 4 SHR 1268. The state court also found that since the involuntary-confession claim lacked merit, trial counsel was not ineffective for failing to make the meritless objection. 4 SHR 1268.

### ii. AEDPA Standards Applied to the State Court's Findings

As mentioned above, when deciding if the state court's decision involved an unreasonable application of clearly established federal law, the federal habeas court looks to whether the state court's decision was ***objectively*** unreasonable. *Wiggins*, 539 U.S. at 520-21. "[S]o long as 'fairminded jurists could disagree' on the correctness of the state court's decision," the state court's determination will be upheld. *Id.* at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. at 664).

Doyle has failed to establish that the state court's determination of this particular ineffective-assistance claim was objectively unreasonable. Accordingly, his claim lacks merit and must be **DENIED**. Doyle's objections to the F&R on this point are **OVERRULED.**

### 5. Mens Rea Evidence

In his fifth claim, Doyle asserts that he was denied the effective assistance of counsel because his trial counsel failed to hold the prosecution to its burden of proof on each element of the offense of capital murder, particularly the *mens rea* element. Pet., 79-100. Doyle claims that although trial counsel knew of his age, immaturity, emotional disturbance, mental illness and mental impairments, counsel failed to investigate and present condition-of-the-mind evidence in the guilt/innocence phase to negate *mens rea*, and/or to raise the affirmative defense of sudden passion, as permitted under state law.[8] Pet., 79.

### a. Magistrate Judge's F&R

The Magistrate Judge did not separately analyze Doyle's fifth claim for relief; that his attorney rendered ineffective assistance of counsel by not holding the prosecution to its burden of proof beyond a reasonable doubt of the *mens rea* for a capital murder conviction, in his F&R. Instead, the Magistrate Judge generally refers to the Evidentiary Hearing Order, stating, "[t]he District Court found that each of the claims of ineffective assistance of counsel failed to allege facts which, if true, would authorize relief . . . . In so doing, the Court also found that other claims lacked merit." F&R, 4 (citing Ev. Hrg. Order). Based upon this Court's rejection of the merits of Doyle's fifth claim for relief, the Magistrate Judge recommended that the claim be denied. F&R, 4.

---

[8]Doyle relies on *Jackson v. State*, 160 S.W.3d 568 (Tex. Crim. App. 2005), and *Ruffin v. State*, 270 S.W.3d 586 (Tex. Crim. App. 2008), to support the presentation of mental health evidence that would have negated Doyle's ability to form the requisite intent to commit capital murder. In *Ruffin*, the CCA drew a distinction between "diminished" mental-state defenses (to exonerate or mitigate an offense because of a person's supposed psychiatric compulsion or an inability to engage in normal reflection or moral judgment), and the type of physical or mental obstruction, such as physical blindness or mental delusion, that would prevent the defendant from knowing a fact that would constitute an element of the offense, such as the fact that the person he was shooting was a police officer. *See Ruffin*, 270 S.W.3d at 593-594. The CCA held that "[i]nsanity is the only 'diminished responsibility' or 'diminished capacity' defense to criminal responsibility in Texas." *Ruffin*, 270 S.W.3d at 593 (citing *Jackson*, 160 S.W.3d at 573).

The portion of the Evidentiary Hearing Order upon which the Magistrate Judge relied in recommending the denial of this claim follows:

> In his fifth and eighth claims, Doyle complains about trial counsel's failure to investigate and present his mental health evidence.  The Supreme Court has stated that in evaluating a failure to investigate, the principal concern
>
>> is not whether counsel should have presented a mitigation case.  Rather, we focus on whether the investigation supporting counsel's decision . . . was itself reasonable.  In assessing counsel's investigation, we must conduct an objective review of their performance, measured for "reasonableness under prevailing professional norms," which includes a context-dependent consideration of the challenged conduct as seen "from counsel's perspective at the time."
>
> *Wiggins v. Smith*, 539 U.S. [at 523] (internal citations omitted) (quoting *Strickland v. Washington*, 466 U.S. at 689).  Therefore, the evaluation of these claims should initially focus upon the adequacy of the investigation of these issues.
>
> Doyle's fifth claim asserts that his trial counsel failed to adequately investigate the state-of-mind evidence and present a *mens rea* defense (alleging specifically that he failed to discover various condition-of-the-mind evidence), failed to explore scientific theories about brain development and impulse control, "failed to hire a mitigation specialist altogether, and relied exclusively on a fact investigator who did not have the specialized training that a mitigation investigator has." (1 SHR 90.)  However, Doyle's attorneys obtained the services of at least two different mental health experts, one of which presented herself as a mitigation specialist.  After certain difficulties with the first one, they obtained the services of Dr. Gilda Kessner, Psy.D., who stated in her affidavit for Doyle's state habeas counsel that "I am a licensed psychologist.  Among other things, I do forensic psychological evaluations in capital cases for risk assessment, mitigation and mental retardation." (2 SHR 610.)
>
> Doyle also contends that his trial counsel failed to adequately investigate and develop evidence from school records showing that he suffered from severe emotional disturbance linked to  his behavior problems.  (Pet. at 86-7.)  However, Dr. Kessner testified at trial that she investigated these matters in preparation for opinions offered in Doyle's trial,
>
>> Regarding his background, his mental illness, history, his family background, his involvement with the juvenile authorities, the treatment he received, or lack of treatment that he received, his behavioral problems in school and in the community and in the juvenile system.

- 31 -

I've looked at all the records that pertained to those things and interviewed him and his family members, as well as at least one individual who treated him.

(38 RR 105.)

I reviewed his school records, and I believe they go down – at least there is some narrative down at least to the third grade.

* * *

And that would include the . . . ARD information admission review and dismissal records that are contained.  It's a review that they do and there's some psychological by master's level psychologist in those records.

I've reviewed the Dallas County Juvenile probation records, and that would include the Last Chance program.  And there's brief treatment records there.  It would also include the psychological evaluations that Dallas County juvenile department did.

The Dallas Youth Village records.  That would include any disciplinaries, the treatment records that were done and his discharge or unsuccessful discharge from those placements.

And the Texas Youth Commission records, the Marlin Assessment and Orientation Unit, which I think has a psychological evaluation in it.

And his Victory Field records, which includes daily behavior logs, group information, his caseworker's reports, disciplinary records, his discharge information.  And then there's some probation or parole records when he was on parole after TYC.

I've reviewed some information from the Dallas County jail since he's been there.  There's limited information there, and . . . the typed version of this statement to the police.

* * *

And a case report from the Rowlett Police Department dealing with the day of this immediate case.

(38 RR 117-19.)

- 32 -

After establishing that Dr. Kessner personally interviewed Doyle twice, Defense counsel continued to elicit her testimony as follows:

> I did face-to-face interviews with his mother and his sister Lolitha, a phone interview with his sister Darranic, and a telephone interview with Dr. Carol Rogers who was treating him.  She's a psychologist at Dallas County Youth Village.   And she treated him over a period of a couple of months with individual psychotherapy for bereavement.

(38 RR 119-20.)  Defense counsel then examined her extensively regarding school records and psychological diagnosis and treatment, including the following discussion of whether Doyle's mental impairment was mild:

> No.  The information contained in his records indicates it's severe to extreme, much more than mild, much more than moderate.

(38 RR 125.)  Defense counsel also asked her specifically as follows:

> Q.      Did you find other records, such as this, from 1997 where they talked about an emotional disturbance that Anthony Doyle had?

> A.      Yes.  They were awaiting the psychological evaluations to determine if he had emotional disturbance.  And they decided that he did have – he did qualify for an ED diagnosis, or plan at school, and that his behavior problems were directly linked to his mental disorder.

(38 RR 125-26.)

Defense counsel continued to examine Dr. Kessner extensively regarding these school records and other records, and the significance of these evaluations regarding federal and state guidelines and the treatment that he received, indicating that a prosecution theory of simply making bad choices does not explain Doyle's behavior.

> Because a child who has attention hyperactivity disorder or depression is not able to make the choices because they have a mental illness that needs to be treated.  And the mental illness is directly related to the behavior.  And the National Institute of Mental Health has information, that, you know, a lot of children are seen as a behavior problem and so then they don't receive treatment.

> And schools very often don't fully implement the types of programs that children need, as well as other information about this disorder, that there's differences in the brain with children who have attention deficit hyperactivity disorder and those who

do not.  There's differences in the brain for children who receive medication and those who do not.

(38 RR 141.)

Dr. Kessner's testimony indicates that she conducted a thorough investigation for her opinions on the behavioral issues raised by the prosecution, and how they were related to his untreated mental disorders, and also the development of the frontal lobes, which continue to develop and provide impulse control into the 20s, beyond Doyle's age at the time.  Dr. Kessner also related this to Doyle's success in the structured environment of TYC and expectation of success in another one like prison.  (38 RR 150-62.)

The same sort of information presented in this habeas proceeding was made the subject of Dr. Kessner's testimony at trial.  While Doyle contends that his attorneys did not investigate mental health evidence for purposes of defending *mens rea*, the same evidence was the subject of Dr. Kessner's investigation for mitigation purposes and was fully available to trial counsel, and made the subject of extensive testimony during the punishment phase of his trial.  Therefore, these matters appear to have been adequately investigated and the information that the attorneys had in their possession fully sufficient to make an informed judgment about the strategic use of this evidence and what, if any, additional investigation was needed.  *See Wiggins*, 539 U.S. at 523-27; *Rompilla v. Beard*, 545 U.S. 374, 381-83 (2005).

One of Doyle's arguments centers on the alleged failure of trial counsel to develop and present this evidence in the guilt/innocence stage of the trial.  However, Doyle has not established that a *mens rea* defense would have been available at trial, even with the additional evidence developed after the trial.  The state court found that the proffered evidence "does not negate his intent to kill but merely shows lack of impulse control or motive.  Thus, the evidence would not have been admissible under the diminished capacity rule of *Jackson v. State*[, 160 S.W.3d 568 (Tex. Crim. App. 2005)]."  (SHF #202; 4 SHR 1233.)  This matter of state law has been determined adversely to petitioner.  Federal courts in post-conviction habeas corpus proceedings do not sit to review questions of state law.  *See Engle v. Isaac*, 456 U.S. 107, 118-121 (1982); *see also Johnson v. Cain*, 215 F.3d 489, 494 (5th Cir. 2000) (referring to this "long-standing principle"); *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding").[9]

---

[9]Even so, the Court notes that these state habeas findings appear consistent with state law. In Texas, it is not a part of the *mens rea* element that the defendant understand the wrongfulness of his conduct at the time of the offense, or that he was operating free from any mental disease or defect so long as he was conscious at the time of the otherwise voluntary act.  Section 6.03 of the Texas Penal Code defines the culpable mental states generally as follows:

Doyle also asserts that his attorneys failed to investigate and present other affirmative defenses such as sudden passion (Pet. at 97-99) or the possibility that he may have suffered from "organic brain damage and/or Bipolar disorder." (Pet. at 86.)  Doyle does not identify any evidence that shows such a diagnosis or would otherwise have supported any of these speculative defensive issues.  The State habeas court also found that the sudden passion defense was unavailable to Doyle, and alternatively that none of his evidence would have supported such a claim.  (SHF ## 209, 213; 4 SHR 1234-35.)  Trial counsel could not have been deficient in failing to investigate and present a defense that was not available and which could have undermined their efforts to establish a credible use of the available mental health evidence.  *See, e.g., Martinez v. Quarterman*, 481 F.3d 249, 258 (5th Cir. 2007) (holding that counsel had sufficient information to decide against pursuit of mental health evidence having mixed value in balancing other factors); *United States v. Puckett*, 505 F.3d 377, 388 (5th Cir. 2007) (affirming the denial of ineffective assistance claims without evidentiary hearing where record did not indicate the existence of any lost defenses based on diminished capacity or mental defect).

Ev. Hrg. Order, 7-12.

### b. Doyle's Objections to the F&R

Doyle objects to this Court's prior determination, incorporated into the F&R, that he has not established that his state trial counsel was ineffective for failing to investigate and present a *mens rea* defense.  Doyle takes issue with a statement by this Court in the Evidentiary Hearing Order that

---

(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.  A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Instead, for any such mental disease or defect to constitute a defense to criminal culpability, it must satisfy the requirements of the affirmative defense of insanity.  "Insanity is the only 'diminished responsibility' or 'diminished capacity' defense to criminal responsibility in Texas."  *Ruffin v. State*, 270 S.W.3d 586, 593 (Tex. Crim. App. 2008) (citing *Jackson v. State*, 160 S.W.3d at 573).  At the time of this offense, section 8.01(a) of the Texas Penal Code provided that "[i]t is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong."  Under Texas law, "wrong" in this context means "illegal."  *Ruffin*, 270 S.W.3d at 592.

he "has not established that a *mens rea* defense would have been available at trial." Obj., 20 (quoting Ev. Hrg. Order, 11). Doyle maintains that he never asserted a *mens rea* "defense" but merely alleged a failure of proof on this essential element of capital murder. Obj., 20-22. Doyle also objects to this Court's finding that the matters of state law had been determined adversely to him because he was asserting a federal ineffective-assistance-of-counsel claim. Obj., 22.

### <u>c</u>. <u>Court's Analysis</u>

This claim also lacks merit. Doyle has failed to demonstrate that this Court's analysis of the merits of his claim in the Evidentiary Hearing Order was erroneous. Based upon the lengthy analysis of his counsel's efforts regarding his mental-health evidence contained in the Evidentiary Hearing Order, Doyle's assertions regarding his counsel's efforts appear not only incorrect, they contradict the record evidence. Moreover, he has wholly failed to overcome the deference to which the state-court findings rejecting this claim are entitled under the AEDPA. The Court begins its analysis by reviewing the state-court findings.

### *i. State Habeas Findings*

The state habeas court found that this "condition of the mind" evidence claim was actually a diminished-capacity "defense." 4 SHR 1269, 1272. Citing *Jackson v. State*, the state court found that no such diminished-capacity defense was recognized in Texas, that the asserted defense was contrary to state law, and that the proffered extrinsic evidence would not have been admissible at trial. 4 SHR 1269, 1271. The state court detailed the evidence in the record showing Doyle's intent to kill, found that Doyle had not shown any organic impairment that would negate *mens rea*, and found that Doyle's own expert, Dr. Milam, characterized his impairment as "mild" and related it to impulse control rather than the ability to form an intent. 4 SHR 1269-1271. The state court

also resolved the disagreement between experts against Doyle, finding that he did not have any organic brain impairment and that he failed to show that he suffered from any mental condition or impairment that would negate his ability to form the *mens rea* to commit the offense.[10] 4 SHR 1270, 1271.   The state court also found that Doyle had failed "to offer any evidence proving by a preponderance of the evidence that counsel's performance was deficient or that it harmed him." 4 SHR 1272.  The court further found that defense counsel's decision "to focus on the actual lack of intent as their strongest defensive theory" as opposed to the inability to form intent was "reasonable trial strategy."  4 SHR 1273.

### ii. *AEDPA Standards Applied to the State Court's Findings*

As addressed above, ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1).  *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir.), *cert. denied*, ___ U.S. ___, 131 S. Ct. 265 (2010); *see supra*, 21.  Because this claim was adjudicated on the merits in the state courts, the presumption of competence required in *Strickland*, combined with the deference required under § 2254(d), makes this Court's review of the state-court adjudication "doubly deferential." *Pinholster*, 131 S. Ct. at 1402.  In the federal habeas review of a *Strickland* claim, the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable" and not whether the reviewing court itself believes trial counsel's performance violated *Strickland*'s standards. *See Richter*, 131 S. Ct. at 785.  In other words, AEDPA does not permit a *de novo* review

---

[10]The state court resolved this disagreement without a live evidentiary hearing.  Although it may be better for these determinations to be made following a live hearing, AEDPA deference applies to factual findings made even without a "full and fair hearing," *Valdez*, 274 F.3d at 942, 951, and this Court is limited to the state-court record in making the determination under § 2254(d).  *See Pinholster*, 131 S. Ct. at 1400.

of state trial counsel's conduct in these claims under *Strickland*. *Id.* As previously noted, federal habeas review of a claim fully adjudicated in state court affords the state court's determination "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id; see supra, 22*.

Doyle has failed to overcome this deferential standard. He objects that the Evidentiary Hearing Order improperly characterized his complaint as a failure to present a "defense" because "he never asserted a *'mens rea* defense,'" but instead alleged a failure of proof of an essential element of capital murder, i.e., the *mens rea* element. Obj., 20-22. However, his petition does not assert an insufficiency-of-evidence claim under *Jackson v. Virginia*, 443 U.S. 307 (1979) to set aside the jury's verdict.[11] To the extent that his objections raise a new argument, Doyle has not requested and is not granted leave to amend his claim.[12] Doyle's existing claim asserts that trial counsel was ineffective for failing to present condition-of-the-mind evidence in the guilt phase to negate the *mens rea* element. The state court reasonably characterized it as a diminished-capacity "defense", 4 SHR 1269, that it was contrary to Texas law, 4 SHR 1271, and that Doyle's "proffered extrinsic evidence would not have been admissible at trial." 4 SHR 1271.

He also objects to the Court's evidentiary-hearing ruling that the matter of state law had been determined adversely, because he is asserting a federal ineffective-assistance-of-counsel claim. Obj., 22 (citing Ev. Hrg. Order, 11). However, the elements of the state-law offense, the availability

---

[11]In the state court, the allegations included an insufficiency-of-the-evidence allegation under *Jackson v. Virginia* that has been omitted from the claim before this Court. 1 SHR 71, 81, 88.

[12]If Doyle had included such an insufficiency-of-evidence claim, it would have been subject to a procedural bar. The state habeas court found that it was not raised in his direct appeal, was not cognizable in the habeas proceeding, and was therefore procedurally barred. 4 SHR 1269-1271.

of a state-law defense, and the admissibility of evidence in the state courts regarding this claim are all matters of state law. While the ultimate determination of whether counsel is ineffective is a matter of federal law, the determination of these underlying state-law matters is properly left to the state courts. *See Paredes v. Quarterman*, 574 F.3d at 291 (determination by CCA that state-law complaint lacked merit precluded ineffective-assistance claim for failure to raise the state-law complaint). Federal courts in post-conviction habeas-corpus proceedings do not sit to review questions of state law. *Engle v. Isaac*, 456 U.S. 107, 110 (1982), *Johnson v. Cain*, 215 F.3d 489, 494 (5th Cir. 2000), and *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991)).

Since these underlying state-law matters have been determined adversely to Doyle, 4 SHR 1272-1273, trial counsel was not ineffective for failing to raise an unavailable defense or take actions that would have been futile. *See Paredes*, 574 F.3d at 291; *Clark*, 19 F.3d at 966. Even so, as this Court previously observed, trial counsel adequately investigated Doyle's mental health and were not deficient for not investigating and not presenting a defense that was not available and which could have undermined their efforts to establish a credible use of the available mental-health evidence. Ev. Hrg. Order, 7-12.

Doyle has failed to show that the state court's denial of his claim was contrary to or an unreasonable application of federal law, or was based on an unreasonable determination of fact in light of the evidence before the state court. *See* 28 U.S.C. § 2254(d). Therefore, Doyle's fifth claim is also **DENIED**. Doyle's objections to the F&R on this point are **OVERRULED**.

### 6. *Developmentally Juvenile*

In his sixth claim, Doyle asserts that the imposition of the sentence of death would result in a violation of his Eighth and Fourteenth Amendment rights against cruel and unusual

punishment because he was only three months past his eighteenth birthday and developmentally younger than eighteen years old at the time of the offense.  Pet., 101-122.  Respondent argues that this claim is barred by the nonretroactivity doctrine of *Teague v. Lane*, 489 U.S. at 310, and lacks merit.[13]  Ans., 81-83.

### a. Magistrate Judge's F&R

The Magistrate Judge found that this claim was based upon a misplaced reliance on the Supreme Court's holdings in *Roper* and *Atkins*, extended beyond the "bright line" limits expressed in those opinions.  F&R, 5-6.  The F&R notes that Doyle does not claim to be mentally retarded despite having been extensively examined by his own mental-health expert.  F&R, 6 (citing 38 State Reporter's Record ("RR"), at 203, 207; 2 SHR 595-601).  The Magistrate Judge concluded that Doyle does not fall within the categories created by the Supreme Court for exclusion from the death penalty, and that Doyle's argument for the creation of a new hybrid category is barred by the *Teague* nonretroactivity doctrine.  F&R, 6 (citing *Hughes v. Dretke*, 412 F.3d 582, 594 (5th Cir. 2005)).

### b. Doyle's Objections to the Magistrate Judge's F&R

Doyle takes issue with the F&R's conclusion that he does not fall within the categories created by the Supreme Court for exclusion from the death penalty, arguing that "the Supreme Court did recognize that '[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18.'"  Obj., 29 (citing *Roper*, 543 U.S. at 574).  Further, because the

---

[13]The state district court on habeas review found that this claim was procedurally barred for failing to raise it in his direct appeal, and only addressed the merits in the alternative.  4 SHR 1274, 1276.  The Texas Court of Criminal Appeals ("CCA") adopted the district court's merits analysis but not the findings and conclusion that this claim was procedurally barred.  *Ex Parte Doyle*, 2008 WL 217985 at *1.  Respondent noted this and does not assert that the state-court ruling was an independent and adequate state ground to bar federal review.  Ans., 81 n.12.

Supreme Court issued *Roper* after his trial, Doyle did not have an "opportunity to introduce his disabilities and argue the rationale of the *Roper* decision to the jury" and the state postconviction procedures were inadequate to litigate this claim. Obj., 29-33. Doyle also objects to the Magistrate Judge's application of *Teague* because a categorical exclusion from the death penalty would be applied retroactively, as it was in *Roper* and *Atkins*. Obj., 33.

### c. Court's Analysis

The state habeas court found that Doyle was eighteen years old at the time he robbed and murdered Cho, and that Doyle's antisocial behavior was not related to his frontal-lobe development or any brain dysfunction, but to character flaws and an antisocial personality disorder. 4 SHR 1275. The state court concluded that this claim was foreclosed by the Supreme Court's holdings in *Roper v. Simmons* and *Atkins v. Virginia*. 4 SHR 1274-1276. It also determined that Doyle's chronological age makes him death-penalty eligible, that his psychological profile does not diminish his eligibility, and that even assuming that the sought case-by-case review of individual brain development of adult capital-murder defendants could warrant relief from a death sentence, Doyle would still merit the death penalty. 4 SHR 1275-1276.

Doyle has failed to show that the state court's application of Supreme Court precedent was either unreasonable or contrary to clearly established federal law as he must to prevail under AEDPA standards. While the Supreme Court did indeed recognize that "the qualities that distinguish juveniles from adults do not disappear when an individual turns 18," it did so in the context of **rejecting** any expansion of this categorical exclusion beyond the line it was drawing at the chronological age of 18. *Roper*, 543 U.S. at 574. Because Doyle does not fall within the bright

line set for this categorical exclusion, he is not entitled to additional state procedures to litigate a meritless claim.

The nonretroactivity doctrine of *Teague* informs the proper review of this claim under § 2254(d).  A new rule of criminal procedure, such as that argued by Doyle, may not be considered as a basis for granting relief under § 2254(d)(1) unless the Supreme Court recognizes an exception to *Teague*.  "Unless the Supreme Court has clearly established that the new rule falls within one of the exceptions to the non-retroactivity principle of *Teague v. Lane*, that new rule could not be considered with regard to petitions governed by AEDPA."  *Hughes*, 412 F.3d at 591 (quoting *Cockerham v. Cain*, 283 F.3d 657, 660 (5th Cir. 2002)).  The Supreme Court has not adopted the proposed new rule nor established the sought exception to nonretroactivity.  Therefore, the state-court adjudication was not unreasonable under § 2254(d)(1).  Doyle's sixth claim lacks merit and is **DENIED**.  Doyle's objections to the F&R on this point are **OVERRULED**.

### 7. *False Light/Bad Acts*

In his seventh claim, Doyle asserts that he was denied his Fourteenth Amendment right to a fair trial because the prosecutor adduced false and misleading evidence of "bad acts" pertaining to Doyle's participation in the Last Chance Program, a boot-camp program.  Pet., 123-136.  Respondent argues that the evidence at trial was not false or misleading, and that the new evidence does not contradict it, much less prove that the prosecutor knowingly submitted false testimony.  Ans., 84, 88-90.

### a. Magistrate Judge's F&R

The Magistrate Judge recommended that this claim be denied.  In the F&R, he set out the applicable standards from *Napue v. Illinois*, 360 U.S. 264, 269 (1959), and *Giglio v. United States*, 405

U.S. 150, 153-154 (1972), prohibiting a prosecutor from intentionally or negligently submitting material, false evidence. F&R, 6-7. The Magistrate Judge also recognized that the prosecutor must actually know or believe the testimony to be false or perjured and that it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements. F&R, 7 (quoting *Kutzner v. Cockrell*, 303 F.3d 333, 337 (5th Cir. 2002)).

After reviewing the state-court findings, the Magistrate Judge noted that "Doyle does not deny that he engaged in the misconduct identified by the state's witness or was discharged from the program for the official reasons stated by the state's witness, but contends that the state's evidence presented him in a 'false light' because it placed the blame on him for the hostile atmosphere that was created by the administrators of the program." F&R, 7-8 (citing Pet., 131-132). The Magistrate Judge then noted former Last Chance drill instructor Anthony Austin's testimony that the administrators had intentionally created a stressful and confrontational atmosphere to challenge the participants, and agreed with the state court findings that Doyle's new evidence did not contradict Austin's testimony regarding Doyle's negative behavior or any of his conduct that occurred during his stay at the program. F&R, 7-8.

### b. Doyle's Objections to the F&R

Doyle objects to the Magistrate Judge's statement in the F&R that he failed to present any evidence contradicting Austin's testimony regarding Doyle's conduct. Doyle maintains that he did not raise an issue about "conduct" but about "the "bad seed" theory argued by the prosecution" and about Austin's testimony that Doyle was discharged from the boot-camp program "because of continuously negative behavior . . . [and] a problem with authority, a lot of outbursts on the guards,

D.I.s, violent outbursts."[14]  Obj., 35 (quoting 37 RR 110).  Doyle argues that his behavior was the direct result of the conduct of the administrators who created the atmosphere primed for the outbreak described by Austin, and not because he was a "bad seed," or evil.  Obj., 36.  He maintains, as he did in his habeas petition, that the prosecution created a false impression with the jury about his behavior that was material and violated his due process rights.  Obj., 36.

### c. Court's Analysis

#### i. State Habeas Findings

The Court begins its analysis by reviewing the state-court findings.  Applying the due process standards set forth in *Napue v. Illinois*, the state habeas court found that Doyle failed to present any evidence showing that the prosecution offered false or perjurious testimony.  4 SHR 1277.  The state court found that during the punishment phase of trial, the prosecution called Anthony Austin, one of Doyle's former drill instructors at the boot-camp program, who testified that Doyle was unsuccessfully discharged from the program because of negative behavior, problems with authority, outbursts against the drill instructors, and thefts.  4 SHR 1277.  Austin testified about the difficult and stressful nature of the boot-camp program and how Doyle reacted when first put under such stress.  4 SHR 1278.  Austin testified that he could not recall any other incidents where a physical altercation occurred involving Doyle.  4 SHR 1278.

The state court found that Doyle proffered into the habeas record an "unverified set of incident reports of disciplinary actions taken against staff members of the boot-camp facility, none

---

[14]This part of Austin's testimony was tempered on further examination.  In a later part of his testimony at trial, Austin acknowledged that he could only remember one altercation with Doyle, 37 RR 128-129, that Doyle had a "slight problem with authority," 37 RR 130, and that "one time he stole some baloney or something.  Maybe some shoes."  37 RR 131.

of which involve [Doyle] and all of which occurred after the time he was there." 4 SHR 1278.

Doyle "also proffers a series of condensed articles regarding abuses that took place in various

facilities around the country, which were run by the same parent corporation." 4 SHR 1278.  The

state court found that "none of [Doyle's] evidence shows that any of Mr. Austin's testimony was

untrue or refutes his testimony regarding the reasons [Doyle] was discharged from boot camp," and

none showed that Doyle was abused there.  4 SHR 1278.  The state court also made alternate

findings regarding the lack of knowledge of the prosecution and the lack of materiality of the new

evidence.  4 SHR 1278-1279.  The state court concluded that Doyle did not prove that Austin's

testimony was false, or that the prosecution knew of any alleged falsity.  4 SHR 1279.  It found that

Austin's testimony was properly admitted, and in the alternative that any error was harmless and

did not violate Doyle's due-process rights.  4 SHR 1279-1280.

### ii. AEDPA Standards Applied to the State Court Findings

Doyle has failed to overcome with clear and convincing evidence the AEDPA's presumption

of correctness which attaches to the foregoing factual findings of the state court.  28 U.S.C §

2254(e)(1).  Doyle must prove a specific factual falsity and not merely allege vague conclusions

about the ultimate falsity of trial testimony.  *See United States v. Webster*, 392 F.3d 787, 801 (5th Cir.

2004).  Doyle has not shown that he did not engage in the negative behavior or have the "problem

with authority" set out in Austin's testimony.  Instead, he produces evidence suggesting that the

parent company had a bad reputation for abusing residents at its facilities and that it provided

staffing for this boot-camp program.  Assuming that the parent company had such problems and

that abuse occurred to other residents, those facts do not prove that the prosecution's theory was

invalid or that Doyle did not engage in the "bad acts" described in Austin's testimony.  Further,

Doyle has not offered any proof that the prosecutors knew about the parent company, knew that it had a bad reputation, or knew that other residents had been abused.

In sum, not only has Doyle failed to rebut the presumption of correctness afforded the state court findings, 28 U.S.C. § 2254(e)(1), he has wholly failed to show that the state-court adjudication was unreasonable under § 2254(d). Doyle's seventh claim is, therefore, **DENIED**. Doyle's objections to the F&R on this point are **OVERRULED**.

### 8. *Ineffective Assistance of Counsel at the Punishment Stage*

In his eighth claim, Doyle complains that he was denied the effective assistance of counsel at punishment because his trial counsel failed to discover mitigating evidence and refute the prosecution's aggravating evidence. Pet., 137-154. Specifically, Doyle claims that trial counsel failed to investigate allegations of abuse, mistreatment and neglect at the boot-camp program referenced in his seventh claim to negate the prosecution's "bad seed" theory. Respondent argues that this claim lacks merit. Ans., 91-105.

### a. Magistrate Judge's F&R

As with Doyle's fifth claim, the Magistrate Judge did not separately analyze Doyle's eighth claim for relief; that his attorney rendered ineffective assistance of counsel at the punishment phase by failing to discover mitigating evidence and failing to refute the prosecution's aggravating evidence. Instead, the Magistrate Judge generally refers to the Evidentiary Hearing Order, stating; "[t]he District Court found that each of the claims of ineffective assistance of counsel failed to allege facts which, if true, would authorize relief . . . . In so doing, the Court also found that other claims lacked merit." F&R, 4 (citing Ev. Hrg. Order). Based upon this Court's rejection of the merits of

Doyle's eighth claim for relief, the Magistrate Judge recommended that the claim be denied.  F&R, 4.

The following is the portion of the Evidentiary Hearing Order upon which the Magistrate Judge relied in recommending the denial of this claim:

> Doyle's eighth claim includes more general allegations about the punishment investigation, including allegations that the various school systems did not adequately treat his psychological problems and that defense counsel failed to investigate and present evidence that there may have been mistreatment of children in a program that Doyle's mitigation specialist directed and which Doyle had resided at one time.  (Pet. at 140-42.) However, the evidence submitted does not indicate that Doyle had actually been a victim of any such mistreatment or how such evidence of mistreatment would otherwise be admissible in his trial.[15]  Instead, it presents examples of "distorting effects of hindsight" that this Court must make every effort to eliminate in order to fairly assess trial counsel's performance and to evaluate it from counsel's perspective at the time.  *Strickland*, 466 U.S. at 689.  Since trial counsel obtained the assistance of an expert who appears to be a highly experienced mitigation specialist who had extensively reviewed the mental health information, trial counsel's use of these expert evaluations appears reasonable.  Therefore, no evidentiary hearing is warranted on these claims and Doyle's motion is DENIED in this regard.

Ev. Hrg. Order, 12-13.

### b. Doyle's Objections to the F&R

In his objections, Doyle argues that trial counsel allowed insufficient time for an adequate mitigation investigation, Obj., 23-24, that the failure of various school systems to adequately treat Doyle's psychological problems constituted abuse and mistreatment, Obj. 25-26, and that evidence of incidents of abuse of other residents in the boot camp program would have been admissible under Texas law "to show that the state run program created an atmosphere primed for outbreaks because

---

[15]"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."  *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citing, *inter alia*, *Alexander v. McCotter*, 775 F.2d 595 (5th Cir. 1985)).

of the extreme (sic) rigid tasks and confrontational attitude exhibited by the staff." Obj., 26. He further objects to this Court's finding that trial counsel did have sufficient information to make an informed judgment about the use of mental-health evidence and what, if any, additional investigation was needed. Obj., 27-28. Doyle argues that this evidence would have had a mitigating effect to show that he was not a "bad seed" as argued by the prosecution. Obj., 26-27

### c. Court's Analysis

#### i. State Habeas Findings

The state habeas court found that Doyle failed to show that his counsel was ineffective for failing to investigate allegations of abuse at the facility, and Doyle failed to offer any proof that he was actually abused at the facility. 4 SHR 1280. The state court found that trial counsel adequately investigated Doyle's participation in the boot-camp program. 4 SHR 1280. The state court also found in the alternative that trial counsel's punishment strategy was reasonable.

> In the alternative, the Court finds that the defense strategy for seeking a life sentence at punishment was to portray [Doyle] as sympathetically as possible by focusing on his family life, the loss of his grandfather and cousin, and his separation from his family during his incarceration at TYC for relatively minor, misdemeanor, offenses. Similarly, the defense used [Doyle's] school records and cross-examination of the State's witnesses to illustrate how the school system failed [Doyle] in terms of his problems. After conducting an extensive investigation, the defense called eight witnesses on [Doyle's] behalf during the punishment phase of trial, including a psychologist who testified about [Doyle's] mental and emotional problems, school records, and the stresses he was undergoing at the time the offense occurred.

4 SHR 1280-1281. The state court concluded that trial counsel's performance was not deficient, that counsel's strategy was sound, and that Doyle had not shown prejudice. 4 SHR 1281.

#### ii. AEDPA Standards Applied to the State Court's Findings

Doyle has not shown that the mitigation investigation conducted in this case was inadequate or that the state-court findings were incorrect. The state court's denial of this claim was not contrary to or an unreasonable application of federal law, nor was it based on an unreasonable determination of fact in light of the evidence before the state court. Doyle asserts that trial counsel should have investigated the mistreatment of participants in the boot-camp program, but has still not shown that he was a victim of any such mistreatment or how evidence that others were mistreated would have been admissible in his trial. Unless the fruit of such an investigation would have been admissible and valuable, it could well have wasted the limited resources at counsel's disposal. "In assessing counsel's investigation, we must conduct an objective review of their performance, measured for reasonableness under prevailing professional norms, which includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Wiggins v. Smith*, 539 U.S. at 523 (internal citations and quotation-marks omitted) (citing *Strickland v. Washington*, 466 U.S. at 689). Assuming that the defense expert discussed with counsel the potential value of investigating this evidence, Pet., 140-141 (quoting Kessner Aff.), counsel appears to have made a reasonable decision that this particular investigation was unnecessary. *See Strickland*, 466 U.S. at 691.

To show abuse or neglect, Doyle points to a lack of school records (such as a comprehensive psychological evaluation) indicating serious attention to his problems and to expert opinions that school officials seemed more interested in punitive measures (such as keeping him in the principal's office) rather than in actually assisting him in coping with his overwhelming problems. Obj., 25-26. However, this evidence does not show the kind of serious abuse or neglect that has mitigating value in light of this offense. Trial counsel obtained two mental-health experts, one of which was a

mitigation specialist who reviewed Doyle's school, juvenile, TYC, and other records and testified extensively at the punishment stage regarding school records and psychological diagnosis and treatment, including Doyle's mental impairment.  38 RR 125-26, 141.

Doyle complains that the employment of the mitigation expert less than a month before the punishment stage afforded insufficient time for an adequate mitigation investigation.  Obj., 23-24. However, the real issue is not when, or even whether, a mitigation expert was obtained, but instead whether the mitigation investigation itself was sufficient.  Circuit precedent requires that "a defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011) (quoting *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993)).  The evidence Doyle identifies as not having been discovered by trial counsel was evidence that others were abused at the boot-camp program after he left, and evidence that the parent company had a bad reputation.  This does not show that he was a victim of any such mistreatment, or how evidence that others were mistreated would have been admissible in his trial, much less alter its outcome.  Therefore, Doyle's eighth claim is also **DENIED**.  Doyle's objections to the F&R on this point are **OVERRULED**.

## VII.

### CONCLUSION

The petition for writ of habeas corpus is **DENIED**.

Considering the record in this case and pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing §§ 2254 and 2255 proceedings, and 28 U.S.C. § 2253(c), the Court **DENIES** a certificate of appealability.  The Court **ADOPTS and INCORPORATES by**

**reference** the Magistrate Judge's Findings, Conclusions and Recommendation (F&R) filed in this case, as modified in this order, in support of its finding that the petitioner has failed to show (1) that reasonable jurists would find this Court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In the event, the petitioner will file a notice of appeal, the court notes that the petitioner will need to pay the $455.00 appellate filing fee or submit a motion to proceed *in forma pauperis*.

**SO ORDERED.**

**Date: June 25, 2012.**

_____

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE